UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

NORBERTO MARTINEZ,

              Defendant.
----------------------------------------------------------------X

MEMORANDUM & ORDER
03 CR 1049 (NGG)

GARAUFIS, District Judge.

On June 22, 2005, following a three-week jury trial, defendant Norberto Martinez ("Martinez" or "Defendant") was convicted of all nine counts of the Superceding Indictment, crimes which arose from the Defendant's participation in a heroin distribution and importation conspiracy. Jointly invoking Federal Rules of Criminal Procedure 29 and 33, the Defendant now moves for an order setting aside the jury verdict and entering a judgment of acquittal, or, in the alternative, ordering a new trial on the following grounds: (1) evidence pertaining to the Defendant's prior conviction for heroin distribution and subsequent incarceration was improperly admitted; (2) the court improperly excluded testimony of Venezuelan witnesses and Edwin Lenis; (3) the court improperly excluded the testimony of Jesus Mojica; (4) the court erred in submitting multiple gun counts to the jury; (5) the Defendant was prejudiced by Barry Shulman's representation of government witness James Solorzano; (6) Pinkerton charges in connection to the gun counts were improperly given to the jury; and (7) the evidence was insufficient to sustain the Defendant's conviction. For the following reasons, the Defendant's motion is denied.

1

I.      STANDARD OF REVIEW

Rule 29 of the Federal Rules of Criminal Procedure authorizes motions challenging the sufficiency of the evidence presented at trial.  "A defendant challenging the sufficiency of the evidence underlying his conviction 'bears a very heavy burden.'"  United States v. Gonzalez, 110 F.3d 936, 940 (2d Cir. 1997) (internal citation omitted).  The court must view the evidence in the light most favorable to the Government and construe all inferences in the Government's favor.  A judgment of acquittal may be entered only where the Court finds that "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt."  Id.

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 1997).  The Second Circuit has stated that a district court should exercise such authority only "in the most extraordinary circumstances."  United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993).

II.     DISCUSSION

A.      Admission of Rule 404(b) Evidence

Prior to trial, the government moved to admit evidence of the Defendant's previous acts of, and conviction for, heroin distribution under Rule 404(b) of the Federal Rules of Evidence.  The Defendant's prior activities involved the distribution of heroin in much the same manner and with several of the same criminal associates as the present conspiracy.  The government also sought to admit evidence that, following his 1995 conviction for heroin distribution, the

Defendant was incarcerated with James Solorzano, a government cooperator and co-conspirator in the current heroin importation and distribution conspiracy. Following briefing and oral argument, the court held that "the government may seek to admit Martinez' previous acts of heroin distribution and the resulting conviction if and when Martinez claims he lacked intent or knowledge with regard to the instant conspiracy charges." (May 25, 2005 M&O ("May 25 M&O") at 1.) At oral argument on the motions, the court indicated that it would consider evidence of the Defendant's prior acts if the Defendant implicitly raised a defense of lack of knowledge or intent in his opening. (May 19, 2005 Hearing Tr. at 7.) The court further noted that, given the nature of the charges, it appeared that the Defendant's only logical defense was to claim lack of knowledge or intent. (Id.) With regard to the Defendant's incarceration, the court held that, until such time as the Defendant's past heroin conviction was admitted, the government could only introduce evidence that the Defendant knew Solorzano prior to the onset of the conspiracy without referring to their mutual incarceration. (May 25, 2005 M&O at 6.)

In his opening statement, the Defendant argued that Solorzano, and not the Defendant, was the individual running the heroin distribution organization. (June 3, 2005 Trial Tr. at 62-63.) During his cross-examination of Solorzano, the Defendant suggested that Solorzano was falsely implicating the Defendant to help himself and questioned Solorzano concerning his conduct prior to his incarceration with the Defendant. As the Defendant's prior experiences with heroin distribution in the Bronx were inextricably tied to Solorzano's introduction and involvement in the instant conspiracy, the limitations placed on Solorzano's ability to explain how he became familiar with the distribution of heroin and his introduction into the conspiracy prevented Solorzano from testifying in a coherent manner. (See, e.g., June 6, 2005 Trial Tr. at 967-968

3

(Defendant asking Solorzano when he became involved in the drug business).) At the conclusion of the Defendant's cross-examination of Solorzano, the government moved for reconsideration of the court's May 25, 2005 404(b) ruling. The court granted the government's request at side-bar, (June 6, 2005 Trial Tr. at 1004), and supplemented its ruling with a written decision on June 8, 2005 ("June 8 M&O").

The Defendant objects to the court's admission of evidence of the Defendant's uncharged conduct. The court adheres to its decision admitting this evidence for the reasons set forth in its May 25 M&O, June 8 M&O, and its oral rulings during trial. As discussed therein, evidence of the Defendant's prior heroin distribution activities and incarceration with Solorzano is highly probative of the Defendant's role in the instant conspiracy, his intent and knowledge of the conspiracy, and completes the story of the charged offenses. See United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000). The court further notes that although the Defendant now claims he relied on the court's initial ruling precluding the admission of evidence of the Defendant's past conduct, the May 25 M&O as well as the court's comments at the May 19 hearing raised the likely possibility that evidence of the Defendant's past conduct would be admitted during trial. Although the Defendant maintains that by avoiding an "outright profession of innocence" his knowledge or intent were not put at issue, the obvious implication of claiming that Solorzano falsely implicated the Defendant is that the Defendant was not involved in the conspiracy. Accordingly, the Defendant's Rule 29/33 motion on the admission of 404(b) evidence is denied.

**B.     Testimony of Venezuelan Witnesses and Edward Lenis**

In the May 25 M&O, the court denied the Defendant's request to depose two Venezuelan citizens who were unavailable for trial on the grounds that the Defendant's request would have

postponed his long-scheduled trial and that the evidence sought by Martinez was of little, if any, value.  For the reasons set forth in the May 25 M&O, the denial of the Defendant's deposition was within the court's discretion and offers no basis to grant the Defendant's Rule 29/33 motion.  The court also notes that although the Defendant now contends that "the deposition could have been secured prior to trial," (Def. Rule 29/33 Motion at 18), at the May 19, 2005 hearing and in the papers supporting his request, the Defendant sought to postpone his trial based on his request to depose the Venezuelan witnesses.  (May 19 2005 Tr. at 17 ("I am only asking for maybe a two or three-week or four-week adjournment, only to do this."); Def. Mtn. for Leave to Depose Witnesses at 8-9.)

At trial, the Defendant sought to introduce the entire recorded conversation between Edwin Lenis, an alleged co-conspirator, and the Defendant's investigator.  As set forth in this court's oral ruling, under Williams v. United States, 512 U.S. 594 (1994), the Rules of Evidence only permitted the admission of Lenis' self-inculpatory statements.  (June 13, 2005 Trial Tr. at 2160-65.)  In addition, regardless of whether Lenis knew his conversation was recorded, because there was no relationship of trust between Lenis and the Defendant's investigator, insufficient indicia of reliable were present to permit the tape's introduction under Rule 807.  Moreover, in addition to being inadmissible hearsay, the taped conversation, as characterized by the Defendant, offered little in the way of exculpatory evidence.  The Defendant asserted at trial that the tape revealed that Lenis did not know the Defendant and that Solorzano solicited Lenis for drug suppliers.  (Id. at 2163.)  Solorzano had already testified at trial that he brought Lenis into the conspiracy, told him to pick up the drugs from couriers, and never introduced Lenis to the Defendant.  (June 6, 2005 Trial Tr. at 806-07.)  Thus, even assuming, *arguendo*, that the tape was

5

admissible, because Lenis' statements largely duplicated prior testimony, the failure to present the tape to the jury did not constitute a manifest injustice.

    **C.    Testimony of Jesus Mojica**

The Defendant contends that the court erred in denying his *ex parte* application for a writ of habeas corpus to allow Jesus Mojica ("Mojica") to testify at trial. Mojica did not have any involvement in the instant conspiracy, but was the cellmate of Carlos Rivera, a government cooperator who was not called to testify at trial. In his *ex parte* application, the Defendant sought Mojica's testimony with regard to what Rivera told him about his communications with Solorzano. The Defendant acknowledged that Mojica's testimony was obvious hearsay, but sought its admission under Rule 803(3) of the Federal Rules of Evidence. (June 20, 2005 Trial Tr. at 2394.) As the court determined at trial, the Defendant's invocation of Rule 803(3) was not appropriate as Mojica would not be testifying as to his own state of mind, which had no relevance to the issues in the case, but to the state of mind of a third party. The court also found that Mojica's testimony, which was essentially double hearsay, was highly unreliable. (Id.) Given its lack of circumstantial guarantees of trustworthiness, there is no basis for the Defendant's current assertion that Mojica's testimony should have been admitted under Rule 807. As Mojica's testimony would have been inadmissible hearsay, the denial of the Defendant's application was proper and affords no basis to support the Defendant's Rule 29/33 motion.

    **D.    Gun Counts**

The third and final Superceding Indictment, filed April 1, 2005, contained two firearms charges under 18 U.S.C. § 924(c)(1). Count Eight charged the Defendant with having knowingly and intentionally used, carried and brandished a firearm in furtherance of Count One, a drug

trafficking crime, between October 2000 and February 2001. Count Nine charged the Defendant with having knowingly and intentionally used and carried a firearm in furtherance of Count One between February 1, 2002 and May 1, 2002. On May 30, 2005, the day before jury selection, the Defendant moved to dismiss Counts Eight and Nine on the grounds that they were multiplicitous. The government ultimately concurred that the firearms charges were multiplicitious and proposed several possible remedies. (June 6, 2005 Trial Tr. at 787-790; 878-883.) The first option, adopted by the court, was to leave the indictment as it stood and, in the event the jury convicted the Defendant of both firearms charges, the court would vacate one count and sentence the Defendant on the remaining count. (Id. at 878.) Without citing to any caselaw, the Defendant now briefly argues that the Defendant was prejudiced because the jury was presented with an inflated indictment.

In United States v. Lindsay, 985 F.2d 686 (2d Cir. 1993), the defendant was convicted of 14 violations of § 924(c)(1) in relation to two drug-trafficking offenses. Reasoning that separate § 924(c)(1) charges for a single underlying drug-trafficking offense would expose a defendant to "enhanced penalties that congress may never have contemplated," the Second Circuit held that "a defendant who uses multiple firearms in relation to a single drug-trafficking crime may be charged with only one violation of § 924(c)(1)." Id. at 673, 676. Although there were twelve excess § 924(c)(1) charges in Lindsay, there was no discussion of any resulting general prejudice to the defendant as a result of the jury being presented with an inflated indictment. Rather, to remedy the multiplicitous charges, the Second Circuit directed the district court to vacate the excess firearms convictions. Id. at 676. Here, there is only one excess § 924(c)(1) conviction, which will be vacated at the time of sentencing. Thus, presenting both firearms counts to the

7

jury, where one of the counts will be vacated at sentencing, does not run afoul of the Second Circuit directives concerning multiplicitous firearms charges. Assuming, *arguendo*, that the Defendant was prejudiced to some limited extent because the jury was presented with a slightly inflated indictment, any minimal prejudice that may have resulted does not justify the extraordinary remedies set forth under Rule 33.[1]

### E. Shulman's Potential Conflict

After the Defendant's conviction at trial following his 1995 arrest for heroin distribution, he retained attorney Barry Shulman to represent him for purposes of sentencing, and possibly appeal. More than five years later, when Solorzano was arrested by New York state authorities in or about 2002, the Defendant recommended that Solorzano use Shulman as his counsel. Thereafter, when Solorzano was arrested in the instant federal case in January 2003, Shulman filed a notice of appearance. In or about August or September 2003, after federal agents identified the defendant and were preparing to charge him in connection with the present conspiracy, Solorzano and Shulman met the government on one more occasion. The government states that it insisted that Shulman leave the case, which Shulman initially opposed until the government was about to send a letter to court outlining why his presence in the case was improper. (June 1, 2005 Trial Tr. at 10.) At that point, Shulman withdrew from the case.

The Defendant asserts that there is the "potential for serious prejudice" by virtue of Shulman's former representation of the Defendant and subsequent representation of Solorzano. However, although the Defendant had the 3500 material from the meeting between Shulman,

---

[1] As the Defendant does not dispute that there was sufficient evidence of the Defendant's guilt of both firearms charges, Rule 29 is inapplicable to this claim.

Solorzano, and the government, the Defendant does not point to any privileged information that Solorzano may have learned from Shulman to use against the Defendant. In addition, although the court offered to interview Shulman *in camera* if the Defendant believed some error was actually committed, the Defendant never sought *in camera* review. (Id. at 17.) Thus, the Defendant has provided no grounds to infer that any prejudice resulted from Shulman's potential conflict.

### F. Pinkerton Charge

The Defendant objects to the inclusion of a Pinkerton charge with respect to the firearms counts, claiming that it contradicted the government's theory of the case because evidence presented at trial indicated that the Defendant, and not his co-conspirators, used or carried firearms in furtherance of the conspiracy.[2] Contrary to the Defendant's claim, testimony at trial also indicated that several of the Defendant's co-conspirators used or carried firearms, making the Pinkerton charge relevant to the claims against the Defendant. (See, e.g., June 3, 2005 Trial Tr. at 714 (testimony that guns recovered at 1130 Pelham Parkway were put there by Solorzano).) Morever, the Defendant fails to articulate what manifest injustice may have occurred as a result of the inclusion of a Pinkerton charge. See United States v. Miley, 513 F.2d 1191, 1208-09 (2d Cir. 1975) (where government's case did not stress agency theory and where individuals charged actually possessed drugs, Pinkerton charge was unnecessary but not prejudicial). Accordingly, the court is unpersuaded by the Defendant's objection to the Pinkerton

---

[2] A Pinkerton charge, Pinkerton v. United States, 328 U.S. 640, 645 (1946), permits a jury to find a defendant guilty on a substantive count without specific evidence that he committed the act charged if it is clear that the offense had been committed, that it had been committed in the furtherance of an unlawful conspiracy, and that the defendant was a member of that conspiracy.

9

charge.

G.    **Evidence in Case**

Apparently renewing his Rule 29 motion for a judgment of acquittal, the Defendant contends that the evidence of his wrongful conduct came exclusively through the uncorroborated testimony of cooperating witnesses, in particular that of James Solorzano. Contrary to the Defendant's characterization of the Government's case, Solorzano's testimony was only one small part of the evidence underlying the Defendant's conviction. Additional evidence of the charged crimes included, but is not limited to, a videotape of the Defendant with admitted co-conspirators entering a heroin stash location, over $500,000 in cash in a secret compartment in the defendant's basement despite a declared income of approximately $14,000 per year, and months of false statements to his probation officer. Moreover, much of Solorzano's testimony, such as testimony concerning an incident where the Defendant brutally beat and threatened to kill Israel "Calvin" Jourdain for stealing drug profits, was corroborated by other witness testimony. (Compare June 3, 2005 Trial Tr. at 705-09 with Tr. at 1188-1194.) Viewing the evidence in the light most favorable to the government, as a rational trier of fact could have found that the government proved the essential element of the crimes charged beyond a reasonable doubt, the Defendant's renewed Rule 29 motion is denied. See Gonzalez, 110 F.3d at 940.

III.    **CONCLUSION**

Having thoroughly considered the entire case and the Defendant's specific arguments, the court concludes that, far from being the product of manifest injustice, the guilty verdict rendered by the jury was amply supported by competent, satisfactory and sufficient evidence properly admitted in the course of a fair trial. The decisions targeted by Defendant as erroneous alone or

in combination, did not work any injustice to Defendant that would warrant a new trial. The Defendant's motion is, accordingly, denied.

SO ORDERED.

Dated: September 13, 2005                      /s/ Nicholas G. Garaufis  
       Brooklyn, N.Y.                              Nicholas G. Garaufis  
                                                   United States District Judge