UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

            -against-

NORBERTO MARTINEZ,

                         Defendant.

**MEMORANDUM & ORDER**
**03-CR-01049 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Norberto Martinez brings a second motion for a reduction in sentence[1] to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Def.'s Second Mot. for Reduction ("Mot.") (Dkt. 299).) The Government opposes the motion. (Gov't Opp. to Mot. ("Opp.") (Dkt. 301).) For the reasons set forth below, Martinez's motion is GRANTED in part, and his sentence is reduced to 276 months' imprisonment for Counts One through Seven, plus 84 months' imprisonment on Count Eight to run consecutive to Counts One through Seven, for a total of 360 months' imprisonment followed by 5 years of supervised release.

## I.   BACKGROUND

In 1995, Martinez was convicted for conspiracy to distribute heroin, in violation of 21 U.S.C. § 846. *United States v. Martinez,* 159 F.3d 1349, at *1 (2d Cir. 1998) (summary order). Subsequently, he was sentenced to 63 months' imprisonment and 4 years of supervised release. *Id.* (*See also* Presentence Investigation Rep. dated 08/29/2005 ("PSR") ¶ 52.) After his release from prison, Martinez continued engaging in the drug trade. Between 2000

---

[1] As further discussed below, Martinez's first motion to reduce sentence was denied by the undersigned in 2022. (*See* Mem. and Order dated 07/29/2022 (Dkt. 292).)

and 2003, Martinez and his brother orchestrated a large-scale heroin importation and distribution ring in Queens and the Bronx. (PSR ¶¶ 3, 6, 17.) At times, the two brothers personally supervised the day-to-day activities of the organization and gave direct orders to other members of the conspiracy. (*Id.* ¶¶ 6, 17.) They also used their drug proceeds to purchase real estate and businesses. (*Id.* ¶ 17.) Beginning in 2002, an investigation conducted by Immigration and Customs Enforcement ("ICE") revealed the structure of Martinez's operations, including that his organization primarily imported heroin through smuggling via couriers on commercial airline flights. (*Id.* ¶¶ 3, 4.) As a result, Martinez was arrested in October 2003 while on supervised release for his 1995 conviction. (*See id.* ¶¶ 16, 52.)

In 2006, Martinez was convicted on seven drug trafficking counts involving heroin possession, distribution, and importation,[2] as well as two counts of using a weapon in relation to a drug trafficking crime,[3] in connection with his role as the leader of a large-

---

[2] Count One, charging conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i); Count Two, charging conspiracy to import one kilogram or more of heroin into the United States, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(A); Counts Three and Five, charging attempt to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i); Counts Four and Six, charging attempt to import one kilogram or more of heroin into the United States, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(A); and Count Seven, charging distribution and possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i). (*Id.* at 3.)

[3] Count Eight, charging use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and Count Nine, charging use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id.*) During Martinez's sentencing, this court dismissed Count Nine upon the Government's request. (*See* Min. Entry dated 05/03/2006 (Dkt. 225).)

scale heroin organization. (*See* PSR ¶¶ 1, 3-7; *see also* Third Superseding Indictment (Dkt. 134); Jury Verdict (Dkt. 185); Judgment (Dkt. 226) at 2-3.)

On May 3, 2006, the court sentenced Martinez to a term of life imprisonment for Counts One through Seven, plus 84 months' imprisonment on Count Eight to run consecutive to the life imprisonment term. (*See* Judgment at 3; *see also* Sent'g Tr. (Dkt. 288-1) at 22:2-5.) The court also imposed a term of supervised release of five years to follow any term of imprisonment. (Judgment at 4; Sent'g Tr. at 22:8-9.)

Martinez is now 53 years old and incarcerated at Federal Correctional Institution, Otisville ("FCI Otisville"). In 2020, Martinez brought a motion for compassionate release,[4] which this court denied on July 29, 2022. *See United States v. Martinez*, No. 03-CR-1049 (NGG), 2022 WL 3019833, at *4 (E.D.N.Y. July 29, 2022).[5] Now, he brings his second motion for compassionate release based on recent amendments to the Sentencing Guidelines.

---

[4] While courts refer to motions under the relevant statute as "compassionate release" motions, the statute speaks in terms of sentence reduction as opposed to release. *See* 18 U.S.C. § 3582(c)(1)(A). In reference to Martinez's motion, this court uses "sentence reduction" and "compassionate release" interchangeably.

[5] The court denied Martinez's motion for the following reasons: (1) Martinez is ineligible for relief under Section 404 of the First Step Act because that law only applies to crack cocaine offenses whereas Martinez was convicted for heroin offenses; (2) Martinez is not entitled to relief pursuant to Section 401 of the First Step Act because it was enacted after Martinez was sentenced and was not made retroactive; (3) Amendment 782 of the United States Sentencing Guidelines (the "Guidelines" or "Sentencing Guidelines") has no effect on Martinez's Guidelines range thereby making him ineligible for a reduction in sentence; and (4) Martinez cannot show extraordinary and compelling circumstances warranting compassionate release because he suffers from no terminal illness or medical condition, he is not the "sole caregiver" to his 80-year-old mother and as such, Martinez's rehabilitation alone cannot serve as an extraordinary and compelling reason for his compassionate release. *See id.* at *1-4.

(*See* Mot. at 3-5.); *see also* U.S. Sent'g Comm'n, Guidelines Manual ("U.S.S.G.") § 1B1.13 (amended Nov. 1, 2023). Martinez raises several points in support of his argument that a reduction is warranted due to extraordinary and compelling reasons as outlined in section 1B1.13(b). (*See generally* Mot. at 3-16.) He also argues that his rehabilitation may be considered in combination with other circumstances in determining whether extraordinary and compelling reasons exist to warrant a reduction. (*See id.* at 3, 5-6.)

First, Martinez argues that the newly added "unusually long sentence" provision in the Guidelines adds support to his extraordinary and compelling reasons justifying release. (*See id.* at 3-4.) In determining whether extraordinary and compelling reasons exist, courts can consider a change in the law if a defendant (i) has received an unusually long sentence, (ii) has served at least 10 years of his imprisonment term, and (iii) such change in the law (other than a non-retroactive amendment to the Guidelines) has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. (*See* Mot. at 3); *see also* U.S.S.G. § 1B1.13(b)(6). Martinez argues that these factors are met because (i) his life sentence is unusually long for his crime, noting that for arguably the same criminal conduct, this court sentenced his brother to a term of 210 months' imprisonment, and then, reduced his sentence to 168 months; (ii) he has served over 20 years of his imprisonment term; and (iii) changes pursuant to Amendments 782 and 821, when considered together, produce a gross disparity between Martinez's current sentence and the sentence likely to be imposed now. Specifically, Martinez asserts that if he were to be sentenced today his Guidelines range would be 324 to 405 months, as opposed to the original range of 360 months to life imprisonment. (*See* Mot. at 4-5.)

4

Second, Martinez argues that his transformative rehabilitation, which includes 50 educational and vocational courses and only one non-violent disciplinary infraction since his sentencing in 2006, in combination with other circumstances, constitute extraordinary and compelling reasons warranting a sentence reduction. (*See id.* at 5-6); *see also* U.S.S.G. § 1B1.13(d). The other circumstances supporting his release, he argues, include his minimum recidivism risk, the more punitive-than-normal incarceration he faced due to COVID-19, the disparity between his original sentence and the sentence he would likely receive at the time of this motion, and the disparity between his sentence and that of his co-defendant brother. (*See* Mot. at 5, 7-8, 11-13).

The Government opposes the motion, arguing that prison conditions during COVID-19, Defendant's rehabilitation efforts, and the recent amendments to the Sentencing Guidelines "fail[] to provide a basis on which to reduce the defendant's sentence." (*See* Opp. at 7-9.)  Further, the Government argues that even if extraordinary and compelling reasons for a reduction are established, Defendant's motion "should nevertheless by [sic] denied because the Section 3553(a) factors weigh against release." (*See id.* at 9.)

Defendant's reply argues that "[t]he government has purposely avoided an analysis" of his combined circumstances, and thereby "ignored the provisions of the Guidelines which specifically direct a court to consider whether a combination of circumstances warrant a reduction in sentence." (*See* Def.'s Reply (Dkt. 302) at 1-2.); *see also* U.S.S.G. § 1B1.13(d). Martinez also argues that the Government's arguments regarding the section 3553(a) factors do not consider Martinez's "extensive rehabilitative efforts while imprisoned," which are highly relevant to his present-day characteristics that should be factored in as part of the section 3553(a) factors analysis. (*See* Def.'s Reply at 3-5.)

## II.  LEGAL STANDARD

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Rabuffo*, No. 16-CR-148 (ADS), 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020).[6] As such, under 18 U.S.C. § 3582(c)(1)(A)(i), "after considering the factors set forth in [18 U.S.C. §] 3553(a)," a court may reduce the term of imprisonment for a defendant who has exhausted their administrative remedies and demonstrated that extraordinary and compelling reasons warrant a sentence reduction.

A "defendant's failure to exhaust administrative remedies is a threshold matter preventing the Court from considering a Section 3582 application." *United States v. Alvarez*, No. 89-CR-0229 (JS), 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020). To that end, a defendant may move for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The "exhaustion requirement is a case processing rule, not a jurisdictional limitation." *United States v. Messina*, No. 11-CR-31 (KAM), 2024 WL 2853119, at *4 (E.D.N.Y. June 4, 2024) (citing *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021)). Where exhaustion is satisfied, a court may grant an application for compassionate release if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission (the "Sentencing Commission") lists examples of extraordinary and compelling reasons warranting sentence reductions. *See generally* U.S.S.G. §

---

[6] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

1B1.13(b). They include, among others, a defendant's (1) medical circumstances; (2) age; (3) family circumstances; (4) unusually long sentence; and (5) a catch-all provision authorizing courts significant discretion to consider "Other Reasons," including "any other circumstance or combination of circumstances" to determine whether a sentence reduction is warranted. *Id.*; *see also United States v. Donato*, No. 03-CR-929 (NGG), 2024 WL 665939, at *3 (E.D.N.Y. Feb. 16, 2024) (noting that the Sentencing Commission specifically rejected a requirement that "Other Reasons" be similar in nature and consequence to the specified reasons; they need only be similar in gravity (citing Nov. 1, 2023 Amendments to U.S.S.G. at 10)); *United States v. Antney*, No. 17-CR-229 (CBA), 2021 WL 4502478, at *1 (E.D.N.Y. Sept. 30, 2021) (acknowledging district courts' broad discretion in deciding sentence reduction motions under the First Step Act (citing *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020))); *United States v. Vasquez*, No. 96-CR-1044 (HG), 2024 WL 2385264, at *3 (E.D.N.Y. May 23, 2024) (emphasizing the Second Circuit's holding in *Brooker* that district courts can consider the full slate of a defendant's extraordinary and compelling reasons pursuant to the First Step Act). According to the Sentencing Commission, the defendant's rehabilitation may be considered in combination with other circumstances as well. *See* U.S.S.G. § 1B1.13(d).

Should the court find that extraordinary and compelling reasons exist, it must also consider the applicable factors set forth in 18 U.S.C. § 3553(a) to determine whether it will exercise its discretion to reduce that defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). After evaluating the section 3553(a) factors and finding that extraordinary and compelling reasons exist warranting a sentence reduction, the court must determine the extent of such reduction. A sentence reduction "must be reasonably responsive to the extraordinary and compelling reasons that

warrant it." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 314 (S.D.N.Y. 2020).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

On April 28, 2023, Defendant submitted a request for compassionate release to the Warden at FCI Otisville. (Mot. at 2 n.4.) The Warden denied Martinez's request on May 24, 2023. (*Id.*; *see also* Ex. B to Mot. ("BOP Request and Denial") at ECF pp. 27-29.) The Government does not contest that Defendant has exhausted his administrative remedies. (*See* Opp. at 7.) Accordingly, this threshold matter is satisfied. Defendant has fully exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

#### 1. Unusually Long Sentence

Courts are unable to consider whether unusually long sentences support extraordinary and compelling reasons warranting release unless certain requirements are met. Specifically:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

First, Martinez argues that if sentenced today, he would receive a Guidelines range between 324 and 405 months, rather than his prior range of 360 months to life in prison. (*See* Mot. at 4-5). The Government seemingly concedes this point, noting that "Probation agrees that, if sentenced today, the defendant's Guidelines range would be 324 to 405 months' imprisonment." (Opp. at 9.) Although the Sentencing Commission does not define "unusually long sentence," it provides helpful statistical information regarding sentence lengths grouped by types of crimes within the Second Circuit. For example, in 2023, the average federal sentences for drug trafficking and firearms-related crimes within the Second Circuit were 58 and 43 months, respectively.[7] Similarly, courts have offered some guidance as well. *See, e.g.*, *United States v. Donato*, No. 95-CR-223 (JMA)(AYS), 2024 WL 1513646, at *7 (E.D.N.Y. Apr. 8, 2024) (describing the defendant's 28 years of imprisonment for a 115-years-long sentence as an unusually long sentence "without doubt").

Martinez has been in prison for more than 20 years, serving a term of life imprisonment for his drug-trafficking crimes to be followed by 84 months' imprisonment for his firearms-related offense. (Sent'g Tr. at 22:2-5.) The lengths of average sentences within the Second Circuit for similar crimes pale in comparison to Martinez's sentence. Furthermore, comparing the highest ends of the Guidelines ranges under which Martinez was sentenced in 2006 and at the time Martinez filed his motion—life imprisonment and 405 months, respectively—it becomes clear that the difference is significant. As such, the court may consider Martinez's prior sentence unusually long. *See United States v. Ballard*, 552 F. Supp. 3d 461, 468-69 (S.D.N.Y. 2021) (finding disparity

---

[7] Significantly, the average federal sentence for murder within the Second Circuit was 249 months. *See* U.S. Sent'g Comm'n, *Statistical Information Packet, Fiscal Year 2023, Second Circuit*, 11 tbl.7 (2023).

between the original 50-year sentence and the likely 25-year sentence at the time of motion as extraordinary and compelling reason warranting sentence reduction); *see also United States v. Watts*, No. 92-CR-797 (KAM), 2023 WL 35029, at *1, 14 (E.D.N.Y. Jan. 4, 2023) (finding "sentence of over [92] years represents an unwarranted disparity" when compared to the likely 37-year sentence at the time of motion); *Donato*, 2024 WL 1513646, at *8 (determining that the "magnitude of disparity" between defendant's 115-year sentence and the 50-year sentence that "a similarly situated defendant would face today" was "exactly the sort [of circumstance] envisioned by the Commission in drafting § 1B1.13(b)(6)").

Second, Martinez was arrested for his instant offense on October 15, 2003. (PSR ¶ 16.) He was sentenced on May 3, 2006. (*See* Judgment.) More than 20 years have passed since the beginning of his imprisonment for his instant offense. That is more than twice the requisite 10 years' imprisonment required under section 1B1.13(b)(6). Thus, the court may consider his more than 20 years of imprisonment as part of its analysis of whether his original sentence is unusually long, constituting an extraordinary and compelling reason.

Third, Amendment 782, which went into effect on November 1, 2014, reduces the base offense level of certain drug-related crimes listed in the Drug Quantity Table in § 2D1.1 by 2 levels and may be applied retroactively. *See* § 1B1.10(d); *see also Martinez*, 2022 WL 3019833, at *2 (noting that Amendment 782 has retroactive effect when a defendant's original sentencing range has subsequently been lowered). As discussed in this court's 2022 ruling, Amendment 782 alone, "has no effect on [Martinez's] Guidelines range." *See Martinez*, 2022 WL 3019833, at *2 (explaining that after a 2-level adjustment to his base offense level, Martinez's Criminal History Category III and adjusted offense

level of 40 still results in a Guidelines range of 360 months to life imprisonment).

Next, Amendment 821, which went into effect on November 1, 2023, among other changes, modifies the calculation of criminal history points ("status points") under U.S.S.G. § 4A1.1(d) for defendants who committed their offense while under a criminal justice sentence, including supervised release, and applies retroactively. *See* U.S.S.G. § 1B1.10(d); *see also United States v. Budovsky*, No. 13-CR-368-4 (DLC), 2024 WL 1676337, at *2 (S.D.N.Y. Apr. 18, 2024). As detailed in his PSR, Martinez had a total of six criminal history points, two of which stemmed from his commission of the instant offense while on supervised release. (PSR ¶¶ 56, 58.) Therefore, Amendment 821 retroactively removes those two points that were previously added to Martinez's criminal history. The parties appear to agree on this. (*See* Mot. at 4-5; Opp. at 9 (conceding Martinez would have four total criminal history points, rather than six).)

It is unclear, however, whether the parties agree that Amendment 742, which removed status points previously added for committing the instant offense less than two years after release from imprisonment (the "recency provision") is retroactive. *See* U.S.S.G. Amend. 742.[8] Martinez argues that Part A[9] of Amendment 821 that took retroactive effect beginning on February 1, 2024 "relates to the re-designation of criminal history 'status points.'" (Mot. at 4.) In addition to the two status points he received for committing the instant offense while on supervised

---

[8] Before Amendment 742 became effective on November 1, 2010, then-section 4A1.1(e) provided as follows: "Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item." *See* U.S.S.G. § 4A1.1(e) (2009).

[9] Part B of Amendment 821 concerns defendants with no criminal history points ("Zero-Point Offenders") and is thus inapplicable here.

release, Martinez notes that he was also assessed one status point for committing the instant offense less than two years after his release from prison. (*Id.*; *see also* PSR ¶ 57.) Accordingly, as he argues, if Martinez were sentenced today, "none of those same status points would apply" and his criminal history points total "would be reduced from 6 points to 3 points – thereby reducing his Criminal History Category from III to II" for a Guidelines range of 324 months to 405 months. (Mot. at 4-5 (emphasis in original).) By Martinez's logic, Amendment 742 is therefore retroactive.

The Government contends that the amendment removing the recency provision is not retroactive. (Opp. at 9 (concurring with the United States Department of Probation that "the Guidelines amendment that removed one status point for committing the instant offense within two years of being released from prison is not retroactive").)

The Government is correct. Amendment 742 removed the "recency provision" effective as of November 1, 2010. U.S.S.G. Amend. 742 (striking then-subsection (e) that added points for committing the instant offense less than two years after release from imprisonment). Nevertheless, Amendment 742 does not apply retroactively. *See cf.* § 1B1.10(d) ("Covered Amendments") (omitting Amendment 742 from the list of amendments with retroactive effect); *see also United States v. Atkinson*, No. 95-CR-232 2010 WL 11692835, at *2 (N.D.N.Y. Dec. 16, 2010) (confirming that Amendment 742 does not apply retroactively).[10] Thus, applying Amendments 742 and 821, only the latter would impact Martinez's criminal history points if he were sentenced today. Martinez would accrue four criminal history points (as opposed to his original of six criminal history points), resulting in a Criminal History Category III. Combined with his adjusted offense

---

[10] In 2010, the list of covered amendments was found in U.S.S.G. § 1B1.10(c).

12

level of 40, Martinez's Guidelines range would remain 360 months to life imprisonment. *See* U.S.S.G. § 5(A). Because Amendment 742 is not retroactive, the court may not consider its impact pursuant to section 1B1.13(b)(6) in determining whether the change produces a gross disparity. As such, Martinez fails to establish that his "unusually long sentence" rises to the level of extraordinary and compelling reasons warranting a sentence reduction.

However, as further explained below, because Martinez "otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [section 1B1.13]," this court may consider Amendment 742 as "a change in the law" to determine the extent of such reduction. *See* U.S.S.G. § 1B1.13(c); *see also Concepcion v. United States*, 597 U.S. 481, 494 (2022) ("In many cases, a district court is prohibited from recalculating a Guidelines range in light of nonretroactive Guidelines amendments, but the court may find those amendments to be germane when deciding whether to modify a sentence at all, and if so, to what extent.").

### 2.   Remaining Extraordinary and Compelling Reasons for a Reduction

In addition to arguing that his unusually long sentence warrants a reduction, Martinez also contends that a variety of circumstances, taken together, in combination with his rehabilitation, warrant a reduction in his sentence because they comprise extraordinary and compelling reasons. (Mot. at 5; Def.'s Reply at 1-2.)

#### a.   *Sentencing Disparities Amongst Co-Defendants*

Martinez argues that the "*gross disparity*" between his life sentence and the 14-year term of imprisonment imposed upon his co-defendant brother in the charged drug organization is a factor supporting extraordinary and compelling reasons for a sentence

reduction. (*See* Mot. at 13 n.12.) *See also United States v. Martinez*, No. 03-CR-1049-2 (NGG), 2015 WL 3454594, at *3 (E.D.N.Y. May 29, 2015) (granting Martinez's brother a reduction in sentence from 210 months to 168 months plus 5 years of supervised release pursuant to 18 U.S.C. § 3582(c)(2)). Defendant's brother, George Martinez, pleaded guilty to charges relating to his role in the large-scale heroin operation run by George and the Defendant. *Martinez*, 2015 WL 3454594, at *1. He was originally sentenced to 210 months of imprisonment and 5 years of supervised release—the bottom of his Guidelines range based on the parties' stipulation to an adjusted offense level of 37 and George's placement in Criminal History Category I. (*Id.*)

In contrast, Defendant went to trial and had a Guidelines range based on an adjusted offense level of 42 and was placed in Criminal History Category III. (PSR ¶¶ 58, 99.) This led to a Guidelines range of 360 months to life in prison. (*Id.* ¶ 99.)

Courts have found that a gross disparity between sentences of co-defendants stemming from their choice to exercise or forgo their constitutional right to a trial is an extraordinary and compelling factor. *See Ballard*, 552 F. Supp. at 468 (finding that a drastic sentencing disparity between co-defendants, in part because one defendant opted to exercise his right to trial whereas his co-defendant accepted a plea deal, supported a determination that extraordinary and compelling circumstances warranted a reduction of defendant's sentence); *see also United States v. Russo*, 643 F. Supp. 3d 325, 334-35 (E.D.N.Y. 2022) (concluding that the disparity in sentencing weighs in favor of finding extraordinary and compelling circumstances); *United States v. Haynes*, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020) (considering the "drastic severity" of defendant's sentence as compared to that of his co-defendant to find extraordinary and compelling circumstances warranting a sentence reduction).

In *Russo*, Defendant was sentenced to a term of life imprisonment after exercising his constitutional right to trial whereas some of his co-defendants received sentences "ranging from time-served, equating to approximately four years, to 270 months." *Russo*, 643 F. Supp. 3d at 334. Therefore, the *Russo* court concluded that the disparity in sentencing "weigh[ed] toward a finding of extraordinary and compelling circumstances" because co-defendants' offense conduct "was no less violent or destructive than those who received life sentences." *Id.* at 334-35. Similarly, Martinez exercised his right to trial and was sentenced to a term of life imprisonment, plus 84 months whereas his brother, who pleaded guilty, was sentenced to 210 months. To be clear, there are other factors that supported a higher sentence for the Defendant. For instance, unlike his brother George, Martinez repeated the same crime for which he was previously incarcerated while under supervised release. (*See* PSR ¶¶ 17, 19 (stating that while out on supervised release, Defendant used his brother's name on paperwork to legitimize business transactions because the latter had no criminal history).)

Thus, at sentencing, the court properly concluded that Martinez was deserving of a higher sentence. But the degree of the sentencing disparity between two otherwise similarly situated co-defendants shows an extraordinary and compelling circumstance. *See Russo*, 643 F. Supp. at 338 (finding rehabilitation, low likelihood of danger to the public, and sentencing disparities between defendant's life term and that of co-defendants, who pleaded guilty, as factors contributing toward finding extraordinary and compelling circumstances). This is especially true because George, like his brother, was one of the leaders of the organization; supervised the organization's day-to-day activities; orchestrated and managed the heroin distribution ring; directed the rental of various apartments used for heroin storage and distribution; and taught the other members of the conspiracy how to extract the heroin from the jacket linings. (*See* PSR ¶¶ 6, 17,

19, 29.) While it is true that George Martinez accepted responsibility for his conduct obviating the need for a trial and received a more lenient sentence of 210 months, that the Defendant chose to exercise his constitutional right to trial and received a life sentence is a disparity that "does not reflect the goals of sentencing." *Russo*, 643 F. Supp. at 335. Accordingly, this disparity in sentencing weighs toward a finding of extraordinary and compelling circumstances here.

### b.  COVID-19 Disparities

Next, Martinez argues that the "near 24/7 lockdowns and restrictions" imposed in prisons in response to COVID-19 pandemic made his incarceration more punitive than anticipated. (*See* Mot. at 8.) Courts in this district have repeatedly held that confinement conditions during the COVID-19 pandemic resulted in more-punitive-than-intended sentences and may be considered when determining whether there are extraordinary and compelling circumstances warranting sentence reductions. *See United States v. Lora*, No. 16-CR-44-5 (KPF), 2022 WL 1055749, at *5-6 (S.D.N.Y. Apr. 8, 2022) (concluding "pandemic-induced conditions of confinement *may* constitute 'extraordinary and compelling' circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic" (emphasis in original)); *see also Reynolds v. United States*, No. 99-CR-520 (NGG), 2022 WL 1444167, at *4-6 (E.D.N.Y. May 6, 2022) (finding the pandemic is "still a relevant factor weighing in favor of a sentence reduction" despite the defendant being fully vaccinated with no medical conditions); *United States v. Mcrae*, No. 17-CR-643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (finding that it is more punishing to spend a day "in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus," which "exacts a price on a prisoner beyond that imposed by an ordinary day in prison").

This court agrees that Martinez's imprisonment was more punitive-than-intended due to COVID-19. Martinez has been detained throughout the entirety of the pandemic; he spent most of that time housed at FCI Fairton where he asserts that "near 24/7 lockdowns and restrictions" were imposed. (Mot. at 8.)[11] Martinez provides further support for this argument by submitting a letter from his sister in which she explains that Martinez was "essentially on 24 hour lockdown with no visits permitted for years on end" and maintained only sporadic telephone contact with family. (*See* Ex. G to Mot. ("Sicorro Martinez Ltr.") at ECF p. 94.) The court finds this argument supportive—but not dispositive—of extraordinary and compelling reasons warranting a sentence reduction. *See Russo*, 643 F. Supp. at 333 (determining near "24-hour lockdowns" as "not independently constitut[ing] an extraordinary or compelling reason," but "weigh[ing] towards a sentence reduction").

### c.  Defendant's Rehabilitation

Furthermore, Martinez contends that his "extraordinary" record of rehabilitation combined with his other arguments supports his motion for immediate release. (*See* Mot. at 14.) While incarcerated, Martinez has completed nearly 50 educational and vocational courses, including courses in anger management, conflict resolution, and various trades. (*See id.* at 5; Ex. C to Mot. ("Summary Reentry Plan") at ECF p. 32.) As of June 2023, Martinez has maintained work assignments while incarcerated with "good work reviews." (Summary Reentry Plan at ECF p. 31.) He has also been elevated to head orderly of his housing unit. (*See id.*)

Indeed, since his sentencing in 2006, Martinez has had only one non-violent disciplinary infraction, which he committed over 3

---

[11] Martinez further notes that he was transferred to FCI Otisville on October 27, 2022 where "the same restrictive conditions remained in place for quite some time." (*Id.* at 8 n.8.)

years ago. (*Id.* at ECF p. 33.) Letters from Martinez's Senior Officer Specialist, J. Hernandez,[12] his sister, and his three children attest to his positive transformation in prison. (*See id.* at ECF pp. 87-89 (noting Martinez's "remarkable resilience and commitment to change" and that he is "determined to break the cycle and provide a stable and nurturing environment for his children"); Sicorro Martinez Ltr. at ECF pp. 94-95 (expressing that Martinez has "done all within his power to try and make amends and improve himself over the years"); Ex. H to Mot. at ECF p. 99 (Martinez's youngest daughter explaining that "I can't tell Your Honor that I knew my father very well prior to his leaving us so many years ago. But I can say that the Norberto Martinez I do know now is a loving and caring parent").) And Martinez has expressed remorse in his own words too. (*See* Ex. I to Mot. ("Norberto Martinez Ltr.") at ECF pp. 101-03.) Martinez writes:

> Being sentenced to life was hard to accept. I was consumed with anger and hatred; until I took an honest look at myself, and realized, that I am the only one to blame. The time I received was a direct result of things that I have either thought, said or done. Therefore, the only one I could hate or be angry at, was myself; because I am responsible for the choices and decisions I have made. . . . Accepting this fact, I also had to learn to forgive myself; so that I could move forward in life and be a better man. I had to accept the fact that my actions have a ripple effect not just on my loved ones but also on society as a whole.

---

[12] J. Fernandez is Defendant's Housing Unit Officer at FCI Otisville. (Ex. E to Mot. at ECF p. 87.)

(*Id.* at ECF p. 101; *see also id.* at ECF pp. 101-03 (noting that he now mentors young men, makes an active effort to be a parent while in prison, and seeks to be a role model for his community).)

Martinez has accepted the reality of his actions and has made strides to become a law-abiding citizen; his efforts exude rehabilitation. Significantly, the Federal Bureau of Prisons has assessed his risk of recidivism if released as "minimum." (*See* Mot. at 7; Ex. F to Mot. ("FSA Recidivism Risk Assessment") at ECF pp. 91-92.) *See also Reynolds*, 2022 WL 1444167, at *6 (concluding a low recidivism risk combined with a "long term" incarceration as "another compelling reason to revisit [defendant's] sentence.") Martinez is 53 years old and has served more than 20 years of his term of imprisonment. It is abundantly clear to the court that he is not the man he once was. The court finds that Mr. Martinez's record of rehabilitation over the years weighs strongly in favor of finding that extraordinary and compelling reasons exist to reconsider his sentence.

Of course, rehabilitation alone is not enough to provide an extraordinary and compelling reason under section 3582(c)(1)(A)(i), but it is often considered alongside other factors. *See, e.g., United States v. Khan*, No. 18-CR-830 (VSB), 2023 WL 2911021, at *4 (S.D.N.Y. Apr. 11, 2023) (considering the defendant's rehabilitation, including that he has completed 35 educational courses, in combination with other factors before granting his compassionate release motion); *United States v. Lugo*, No. 01-CR-922 (NG), 2022 WL 732153, at *7 (E.D.N.Y. Mar. 11, 2022) (granting the defendant's motion and reducing his sentence to 25 years after considering his rehabilitation in conjunction with his vulnerability to COVID-19 and the disparity between his sentence and that of his co-defendant); *Russo*, 643 F. Supp. 3d at 332 (noting the defendant has achieved extraordinary rehabilitation and considering it alongside other factors in

finding that extraordinary and compelling reasons warrant a sentence reduction).

This court does not find that Martinez's "unusually long sentence" demonstrates an extraordinary and compelling reason, warranting a sentence reduction. However, Martinez's post-conviction rehabilitation, low recidivism risk level, harsher-than-intended punishment due to COVID-19 lockdowns and restrictions, more than two decades of imprisonment, and the disparity between his sentence and that of his co-defendant, when taken together, accumulate to extraordinary and compelling reasons that justify a moderate sentence reduction. *See Donato*, 2024 WL 665939, at *8 (explaining that factors, in aggregate, and not each individual factor, should be considered to determine extraordinary and compelling reasons sufficient for compassionate release). The court thus finds that Martinez meets the threshold requirements for a reduction in sentence.

### C.   18 U.S.C. § 3553(a) Factors

Even when extraordinary and compelling reasons for a sentence reduction exist, courts must consider the section 3553(a) factors, to the extent they are applicable, to determine whether such reasons support a sentencing reduction. *See* 18 U.S.C. § 3582(c)(1)(A). The relevant factors include: (i) the nature and circumstances of the offense; (ii) the history and characteristics of the defendant; (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (iv) the need to adequately deter criminal conduct; (v) the need to protect the public from the defendant; (vi) the need to provide the defendant with necessary rehabilitation; and (vii) the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a); *Russo,* 643 F. Supp. at 335 (same). After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary[.]" 18 U.S.C. § 3553(a).

Martinez, who has served over 20 years of a life sentence for repeatedly importing and distributing heroine, seeks immediate release. (*See* Mot. at 1.) The Government argues that even if extraordinary and compelling reasons for compassionate release are found, that the section 3553(a) factors weigh against Martinez's release, because "granting release would not reflect the seriousness of his offenses," nor offer adequate deterrence. (*See* Opp. at 10.) The Government further asserts that Martinez's "convictions demonstrate a flagrant disrespect for the law and the safety of others," especially because his crimes "victimized the community" and he used physical violence in carrying out those crimes. (*See id.*) Martinez replies that his rehabilitation over the last 20 years in prison "is highly relevant to a present day assessment of the 3553(a) factors," which support his immediate release. (Def.'s Reply at 3-4.)

A review of these factors indicates that immediate release is inappropriate. Martinez's conduct wreaked havoc on the community. Of note, he committed the instant offense while on supervised release for the same conduct. His drug ring was both extensive and remarkably sophisticated. During the arrest of Carlos Rivera, who was one of the lieutenants within Martinez's organization, more than 4 kilograms of heroin were found in the lining of jackets in Rivera's knapsack. (PSR ¶¶ 6, 10.) Over the course of the investigation, authorities recovered large quantities of narcotics and firearms, as well as money, including over $100,000 hidden in a false compartment of a bed frame. (*Id.* ¶¶ 3, 9-15.) As this court explained during Martinez's sentencing:

> The nature of the offense is that he engaged in an extensive drug business, whether from one location or five locations, he ran a drug factory with others that prepared for the wide spread distribution of heroin, to people who became addicted to

> and continued to be addicted to it. The crime of
> distributing heroin is not a victimless crime.

(Sent'g Tr. at 19:19-20:1.)

The court finds that a sentence that reflects this concerning pattern of conduct is necessary. However, "citing to the severity of the Defendant's crime does not end the inquiry." *Donato*, 2024 WL 665939, at *8. Upon due consideration of the other factors and his rehabilitation, a limited sentence reduction to 276 months' imprisonment for Counts One through Seven, plus 84 months' imprisonment on Count Eight to run consecutive to Counts One through Seven, for a total of 360 months, is justified in accordance with 18 U.S.C. § 3553(a).[13] A 30-year sentence would enable Martinez to be released around the age of 60. This sentence reduction, rather than immediate release, adequately reflects the seriousness of Martinez's crimes, while balancing the need to deter criminal conduct and to avoid unwarranted sentencing disparities. *See Reynolds*, 2022 WL 1444167, at *7 (reducing a 52-year-old convicted murderer's sentence to 36 years—from the highest to the lowest end of his original Sentencing Guidelines range); *see also Russo*, 643 F. Supp. at 339 (reducing a 56-year-old convicted murderer's sentence from life to 35 years' imprisonment).

Moreover, Defendant's age and substantial rehabilitation over the last two decades in prison, combined with his low recidivism level, adequately protect the public from further threats. *See*

---

[13] Although the resulting sentence—276 months' imprisonment—for Counst One through Seven falls slightly below the Guidelines range, considering Martinez's 84 months' imprisonment on Count Eight that will run consecutive to the former, the resulting total of 360 months' imprisonment is still within Martinez's original Guidelines range. (*See* Sent'g Tr. at 9:1-4.) It is also within the 324 to 405 months Guidelines range that he would receive if sentenced today. (*See* Mot. at 5; *see also* Opp. at 9.)

*Reynolds*, 2022 WL 1444167, at *7, 7 n.3 (finding "evident rehabilitation" and "age" of 52-year-old defendant as persuasive in sentence reduction and that a "36-year sentence is certainly adequate to 'protect the public' from [defendant's] future conduct"); *see also* U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010*, 24 (Sept. 2021) (noting that recidivism rates steadily decline with increasing age, and finding that the lowest rearrest rates were for offenders aged 60 and older); *United States v. Piggott*, No. 94-CR-417 (SHS), 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2022) (highlighting advanced age as a relevant factor for predicting recidivism). As such, the court concludes that a sentencing reduction is consistent with the section 3553(a) factors.

### D.  Whether a Sentence Reduction is Warranted

Lastly, after evaluating the section 3553(a) factors and determining that extraordinary and compelling reasons exist, this court also concludes that such reasons warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). As relevant here, where a defendant "otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction" pursuant to the policy statement under section 1B1.13, "a change in the law (*including an amendment to the Guidelines Manual that has not been made retroactive*) may be considered" in reducing such defendant's sentence. U.S.S.G. § 1B1.13(c) (emphasis added). Here, the court acknowledges that based on the changes in law pursuant to Amendments 742 (removing a status point previously added for committing the instant offense within two years of release from imprisonment), 782 (removing two status points previously added for committing the instant offense while out on supervised release), and 821 (lowering the base offense level by two points), Martinez's Guidelines range at the time of the filing of his current

motion would be 324 to 405 months.[14] Therefore, considering Martinez's rehabilitation, low recidivism risk level, the punitive prison conditions during the COVID-19 pandemic and the collateral consequences on his family, the more than two decades of imprisonment, and the disparity between his sentence and that of his co-defendant, a reduction of his life imprisonment to 360 months' imprisonment followed by 5 years of supervised release is warranted.

## IV. CONCLUSION

For the foregoing reasons, Martinez's motion is GRANTED in part, and his sentence is reduced to 276 months' imprisonment for Counts One through Seven, plus 84 months' imprisonment on Count Eight to run consecutive to Counts One through Seven, for a total of 360 months' imprisonment followed by 5 years of supervised release.


SO ORDERED.


Dated:    Brooklyn, New York
          August 28, 2024

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

---

[14] As noted *supra*, because this court has already found that Martinez has otherwise established that extraordinary and compelling reasons warranting a sentence reduction exist, it can now consider a non-retroactive amendment, namely Amendment 742, "for purposes of determining the extent" of Martinez's sentencing reduction. *See id.*; *see also* Part III.B.1.